UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-mj-8754-SMM

FILED BY SW D.C.
Oct 2, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

**IN RE CRIMINAL COMPLAINT**
______________________________/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

By: */s/ Vitaliy Kats*
VITALIY KATS (FL Bar 118748)
Assistant United States Attorney
500 South Australian Ave, Suite 400
West Palm Beach, Florida
Tel: (561) 209-1069
Email: vitaliy.kats@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.

CARLTON MCCLENDON

Defendant(s)

Case No. 26-mj-8754-SMM

FILED BY SW D.C.
Oct 2, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 3, 2026 in the county of Palm Beach in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 U.S.C. § 922(g)(1) | Possession of a Firearm and Ammunition by a Convicted Felon |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

[signature]

*Complainant's signature*

ATF TFO Kevin Drummond

*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date: October 2, 2026

[signature]

*Judge's signature*

City and state: West Palm Beach, FL

Hon. Shaniek M. Maynard, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kevin W. Drummond, being first duly sworn, does hereby depose and state as follows:

## INTRODUCTION

1. Your affiant submits this affidavit in support of a criminal complaint charging **Carlton MCCLENDON** ("MCCLENDON")**,** with one (1) count of Felon in Possession of a Firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

2. Your affiant, Kevin W. Drummond, is a Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and has served in that capacity since November 2017. Your affiant also is a duly sworn Deputy Sheriff in and for Palm Beach County, Florida. In total, your affiant has approximately 22 years of law enforcement experience. As a Task Force Officer with ATF, your affiant's duties and responsibilities include conducting criminal investigations of individuals that have violated federal laws, particularly laws contained in Titles 18 and 26 of the United States Code.

3. The facts contained in this affidavit come from my personal knowledge, training, and experience, as well as information obtained during my investigation from other members of law enforcement, witnesses, and the victims affected by these criminal violations. Because this affidavit is submitted for the limited purpose of obtaining a criminal complaint, it does not contain all the facts known to me about the investigation. It contains only those facts that establish probable cause for the offenses listed herein.

## PROBABLE CAUSE

4. On August 3, 2026, at approximately 1855 hours, Deputy Sheriff ("D/S") Markland of the Palm Beach County Sheriff's Office ("PBSO") was conducting proactive patrol in the area of Gun Club Road and South Military Trail. D/S Markland observed a black four-door Infiniti SUV bearing Florida registration XDR931 approach the intersection of South Military Trail and

Gun Club Road before traveling southbound on South Military Trail. As the vehicle passed D/S Markland's location, D/S Markland observed the front windshield to be unlawfully tinted and the side windows to be extremely dark, preventing D/S Markland from seeing the occupants inside.

5. Based on the observed window tint violations, D/S Markland made a U-turn and positioned his marked patrol vehicle directly behind the Infiniti. D/S Markland then activated his agency-issued emergency lights and audible siren and conducted a traffic stop. The vehicle came to a controlled stop in the parking lot located at 770 South Military Trail, West Palm Beach, Florida, which is located in the Southern District of Florida.

6. D/S Markland approached the driver's side of the vehicle, identified himself as a PBSO deputy, and explained the reason for the traffic stop. At the outset of the stop, D/S Markland asked both occupants of the vehicle whether either of them was in possession of any firearms. The female driver of the vehicle ("S.R.") immediately advised that she had a firearm inside of her purse. MCCLENDON, who was sitting in the front passenger seat, did not respond to the question.

7. D/S Markland utilized his agency-issued Enforcer II Tint Meter to test the driver's side window, which registered 18% visible light transmission, below Florida's legal minimum of 28% for front side windows. While requesting S.R.'s driver's license, registration, and proof of insurance, D/S Markland detected a strong odor of freshly burnt marijuana from the interior of the vehicle. In plain view, D/S Markland observed an ashtray located in the center cup holder of the vehicle containing a freshly burnt marijuana cigarette (commonly known as a "roach").

8. D/S Markland asked S.R. and MCCLENDON whether either of them possessed a valid Medical Marijuana Use Registry identification card. S.R. answered, "No." MCCLENDON answered that he did possess a medical marijuana card and provided it to D/S Markland. Upon

inspecting the card, D/S Markland determined it had expired on May 19, 2026, and therefore was not valid at the time of the stop.

9. Based upon the strong odor of freshly burnt marijuana, the roach in plain view, and D/S Markland's training and experience in narcotics investigations, D/S Markland removed both occupants from the vehicle to conduct a lawful narcotics investigation.

10. As D/S Markland and D/S Joseph Strzelecki prepared to conduct a protective pat-down of MCCLENDON for officer safety, D/S Strzelecki stated to MCCLENDON, "I'm just going to search your pockets really quick to make sure you don't have any firearms on you." Even though D/S Strzelecki did not ask MCCLENDON a question, MCCLENDON uttered, "Yeah, I do," indicating that he had firearm. D/S Markland chastised MCCLENDON for not initially being honest about having a firearm when asked but commended him for ultimately admitting it.

11. As D/S Markland was commending MCCLENDON for his honesty, D/S Strzelecki asked MCCLENDON, "Are you a convicted felon?" MCCLENDON responded, "Yeah," implying that his status as a felon was why he chose not to disclose the firearm when asked earlier.

12. From the left front pocket of MCCLENDON's shorts, D/S Markland recovered a black Taurus G2C semi-automatic handgun (serial number ABL116864) from MCCLENDON's left front pocket. He also recovered two pocketknives located on MCCLENDON's waistband.

13. At this point, D/S Strzelecki handcuffed MCCLENDON, and D/S Markland conducted a search incident to arrest of MCCLENDON. During the search incident to arrest, D/S Markland located two small containers with several yellow pills. One of the containers also had a small amount of marijuana. Additionally, D/S Markland located a pill container hanging from MCCLENDON's neck which contained a small clear plastic baggie filled with a yellow/white powdery substance which all tested positive for MDMA (commonly known as ecstasy). After D/S

Markland removed the suspected narcotics from his person, MCCLENDON uttered that it was "all ecstasy." Additionally, D/S Markland located several unused small clear plastic baggies in MCCLENDON's wallet. Based upon the affiant's training and experience, these baggies are commonly used to package narcotics for distribution and sale.

14. As D/S Markland was completing his search incident to arrest of MCCLENDON, he chastised S.R, who was standing on the curb and was not handcuffed, by saying, "You can't be smoking weed in the car." S.R. stated that she and MCCLENDON had just finished smoking the marijuana cigarette several minutes before D/S Markland initiated the traffic stop, which was why the vehicle smelled like freshly burnt marijuana.

15. D/S Markland next conducted a probable cause search of the vehicle. On the front passenger-side floorboard, directly beneath where MCCLENDON's legs were during the traffic stop, D/S Markland located a camouflage-print bag.

16. Inside the camouflage-print bag, D/S Markland located a prescription pill bottle containing five capsules filled with a brown powdery substance that later field-tested positive for heroin. D/S Markland also located a large clear plastic baggie containing a yellow powdery substance which later field-tested positive for MDMA (commonly known as ecstasy).

17. Additionally, D/S Markland recovered a silver and black Bersa Thunder semi-automatic handgun (serial number SSF91251) along with an extended drum magazine. The firearm and magazine were concealed toward the bottom of the bag under multiple wads of paper.

18. After searching the camouflage bag, D/S Markland returned to MCCLENDON, who was sitting handcuffed on the curb, and read him his *Miranda* rights. After he finished reading the *Miranda* rights, D/S Markland asked MCCLENDON, "The camo bag on the floorboard where your iPad was, is that yours?" MCCLENDON responded, "I don't know nothing about that."

19. With the above information, your affiant researched MCCLENDON's criminal history and learned that MCCLENDON is, in fact, a convicted felon and therefore prohibited from possessing firearms. MCCLENDON has the following convictions:

a. On January 17, 2006, MCCLENDON was adjudicated guilty in the Fifteenth Judicial Circuit Court of Florida (case number 50-2006-CF-008980-BXXXMB) for Burglary while Armed with a Firearm, five (5) counts of Grand Theft of a Firearm, and Grand Theft from a Dwelling.

b. On February 2, 2011, MCCLENDON was adjudicated guilty in the Fifteenth Judicial Circuit Court of Florida (case number 50-2010-CF-014834-AXXXMB) for Possession of Cocaine.

c. On November 5, 2019, MCCLENDON was adjudicated guilty in the Fifteenth Judicial Circuit Court of Florida (case number 50-2019-CF-003671-AXXXMB) for Felon in Possession of a Firearm, Possession of Cocaine, and Possession of a Schedule IV Controlled Substance.

d. On September 6, 2022, MCCLENDON was adjudicated guilty in the Fifteenth Judicial Circuit Court of Florida (case number 50-2021-CF-004043-AXXXMB) for Possession of MDMA with Intent to Sell and Possession of Cocaine with Intent to Sell.

e. On October 1, 2024, MCCLENDON was adjudicated guilty in the Fifteenth Judicial Circuit Court of Florida (case number 50-2024-CF-005922-AXXXMB) for Possession of Methamphetamine.

Based on the above convictions, MCCLENDON cannot legally possess firearms or ammunition.

20. Your affiant was monitoring jail calls related to MCCLENDON and located a call made from jail intake by MCCLENDON to phone number 561-615-2263 on August 4, 2026, at approximately 7:51 a.m. During this call MCCLENDON makes a statement at approximately six (6) minutes and thirty (30) seconds, "I got caught with both of my shits." From the context of the investigation, MCCLENDON was referencing the two (2) firearms that were located during the traffic stop. The statement implies that MCCLENDON had knowledge of both firearms believed to be in his possession. The statement further implies that MCCLENDON was not truthful when he said that he lacked knowledge about the contents of the camouflaged bag.

21. As part of this investigation, an ATF Special Agent trained in determining interstate nexuses for firearms examined the firearms from the traffic stop. The Special Agent identified the firearms as: (1) a black Taurus model G2C (serial number ABL116864) 9mm semi-automatic pistol; and (2) a black Bersa model Thunder (serial number SSF91251) 380 caliber semi-auto pistol. The Special Agent determined the firearms were manufactured outside the State of Florida and therefore must have traveled in and affected interstate or foreign commerce.

## CONCLUSION

**WHEREFORE**, on the basis of the facts and circumstances set forth above, your affiant respectfully submits probable cause exists to charge **Carlton MCCLENDON,** with the following violation of federal law: one (1) count of Felon in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Sections 922(g)(1).

(*Remainder of Page Intentionally Left Blank*)

FURTHER YOUR AFFIANT SAITH NAUGHT

________________________________
Kevin W. Drummond,
Task Force Officer, ATF

SWORN AND ATTESTED TO ME
TELEPHONICALLY (VIA FACETIME)
BY THE APPLICANT IN ACCORDANCE
WITH THE REQUIREMENTS OF
FED. R. CRIM. P. 4(d) AND 4.1 THIS
2nd DAY OF OCTOBER, 2026.

________________________________
**SHANIEK M. MAYNARD**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: Carlton McClendon

**Case No**: 26-mj-8754-SMM

Count #1

Possession of a firearm by a convicted felon

Title 18 U.S.C. § 922(g)(1)

*** Max. Term of Imprisonment: 15 years**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 3 years**
*** Max. Fine: $250,000**
*** Special Assessment: $100**

---

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**